**Yan Fang ZHANG, Petitioner,**

**v.**

**Alberto R. GONZALES, United States Attorney General, The Board of Immigration Appeals, Edward J. McElroy, Interim Director Bureau of Immigration and Customs Enforcement, Mary Ann Gantner, Interim Director Bureau of Citizenship and Immigration**

Services, New York, and Julie L. Myers, Assistant Secretary, Bureau of Immigration and Customs Enforcement, Respondents.[1]

Docket No. 03–40653–AG.

United States Court of Appeals, Second Circuit.

Argued: Jan. 27, 2006.

Decided: June 21, 2006.

---

1. Pursuant to Fed. R.App. P. 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft, and Julie L. Myers is automatically substituted for former Assistant Secretary, Bureau of Immigration and Customs Enforcement, Michael Garcia, as the respondents in this case.

Craig T. Donovan, New York, NY, for Petitioner.

Stephen R. Cerutti II, Assistant United States Attorney, for Thomas A. Marino, United States Attorney for the Middle District of Pennsylvania, Harrisburg, PA, for Respondents.

Before RAGGI and HALL, Circuit Judges, and KORMAN, District Judge.[2]

RAGGI, Circuit Judge.

Chinese national Yan Fang Zhang (A 77 122 634) petitions for review of the September 8, 2003 order of the Board of Immigration Appeals ("BIA"), summarily affirming a July 24, 2002 order of Immigration Judge ("IJ") Adam Opaciuch, de-

---

**2.** The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

**3.** Because petitioner does not raise any argument in her brief to this court about CAT relief, we deem any such challenge waived

nying Yan Fang Zhang's claims for asylum, withholding of removal, and relief pursuant to the Convention Against Torture ("CAT").[3] Petitioner contends that the IJ erred in finding that she failed to demonstrate past political persecution based on her union activities in China. She further contends that the IJ erred in failing to recognize that, having borne two children in the United States, petitioner had a well-founded fear of future political persecution, specifically, sterilization, if returned to China. Because the IJ's findings on Yan Fang Zhang's past persecution claim are supported by substantial evidence, no extended discussion is necessary for us to deny further review of this argument. On her feared future persecution claim, however, we are compelled to remand for further proceedings to allow the BIA to explain why it denies Yan Fang Zhang relief from removal when, on apparently identical facts, the agency granted such relief to her husband. As we explain herein, absent such an explanation, we cannot determine whether the denial in this case is arbitrary.

I. *Background*

A. *Alleged Past Persecution for Union Activities*

On June 9, 1999, Yan Fang Zhang left the Fujian Province of China and illegally entered the United States. Approximately one year later, on June 6, 2000, she applied for asylum on the ground of past political persecution connected with union activities at her former place of employment.

---

and do not discuss it further. *See, e.g., Yueqing Zhang v. Gonzales,* 426 F.3d 540, 542 n. 1 (2d Cir.2005); *Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir.1998). We focus, instead, on her claims for asylum and withholding of removal.

At her asylum hearing, petitioner testified that, in January 1999, her employer laid off 40–50 workers, including petitioner. To protest these layoffs, Yan Fang Zhang and several of her terminated coworkers staged a protest at the employer's factory. When the discharged workers refused to leave the premises, factory supervisors called the police to remove the protesters. A scuffle ensued during which petitioner struck a supervisor (she claims accidentally) and was, in turn, struck by him.

### B. *The Alleged Fear of Future Sterilization*

On June 7, 2001, immigration authorities served Yan Fang Zhang with notice of removal. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). The following year, on May 31, 2002, petitioner amended her asylum application to claim that she feared future persecution, including sterilization, if returned to China. To support this claim, Yan Fang Zhang offered evidence of her March 2002 marriage to Jian Di Zheng, another Chinese immigrant, whom petitioner met in the United States and by whom she had two daughters, the first born in September 2000 and the second born in April 2002.

At the outset of Yan Fang Zhang's removal hearing, the IJ inquired as to the immigration status of petitioner's husband. Counsel informed the IJ that petitioner's spouse had been denied relief from removal but granted voluntary departure in 1998. In July 2000, however, he had filed a motion to reopen his petition based on petitioner's first pregnancy, which motion remained pending. In light of these circumstances, the IJ initially considered consolidating the couple's cases, but ultimately decided to proceed only with Yan Fang Zhang's application for relief:

The family planning is really, it deals with future persecution being that she's got two kids now. I mean that just gets her real main argument and that's going to be the husband's argument now that he's married and he [has] two kids. I should do them together rather [than] piece[meal] but, you know. Who knows. Maybe [his] motion [to reopen] will be denied.

Tr. of IJ Hearing, July 24, 2002, at 12.

Testifying in support of her claimed fear of future persecution, Yan Fang Zhang stated that the Chinese government considered children born to its nationals in the United States to be Chinese citizens. Because she now had two children, she feared that, if returned to China, she would be fined, detained, and sterilized because of China's restrictive family planning policies. Although these policies were not strictly applied in some rural areas, Zhang explained that, if returned to China, she could not relocate from her former urban home because she would then be unable to see her family.

Petitioner's husband did not testify at her hearing; nevertheless, the parties stipulated that his testimony regarding China's family planning policies would be consistent with that offered by petitioner.

### C. *The IJ's Ruling,*

In an oral decision rendered the same date as the hearing, the IJ denied petitioner's application for relief from removal. Although the IJ assumed that petitioner had testified credibly about her union activities, he concluded that she failed to demonstrate either that the actions of which she complained constituted persecution or that she was targeted on account of her political opinion. The IJ found that (1) the challenged layoffs were prompted by the employer's financial difficulties, not workers' political beliefs; (2) petitioner

was laid off because she had relatively little seniority, not because her parents had failed to join the Communist party; (3) when, during a union protest of the layoffs, factory supervisors called the police, the only official action taken against the protesters was to remove them from the premises, which conduct did not constitute persecution; and (4) a physical altercation between petitioner and a factory supervisor during the union demonstration, and that supervisor's subsequent visits to petitioner's parents' home, were attributable to personal anger, not politics. The IJ found no evidence that the public security bureau or any other government official ever threatened petitioner.

With respect to petitioner's claimed fear of future persecution, the IJ concluded that, although petitioner had a subjective fear of future persecution based on China's restrictive family planning policies, she failed to demonstrate that this fear was objectively reasonable. Citing country reports on conditions in China, the IJ concluded that petitioner would, "most likely," be fined if she returned to China with two children born in the United States, action that "does not amount to persecution." IJ Ruling, July 24, 2002, at 9–11. Further noting China's "very large floating population," the IJ found that, on return to China, petitioner might well relocate to an area where state family planning policies are "not strictly enforced." Id. at 11.

Accordingly, because the IJ found that petitioner failed to establish past persecution or a well-founded fear of future persecution, he denied her application for asylum and withholding of removal. Similarly finding no evidence to indicate that petitioner would be tortured if returned to China, the IJ denied her CAT relief.

### D. *Petitioner's BIA Appeal*

Yan Fang Zhang appealed the IJ's decision to the BIA. While that appeal was pending, petitioner's counsel, by letter dated May 2, 2003, advised the BIA that, on April 23, 2003, the agency had granted to Yan Fang Zhang's husband asylum and withholding of removal apparently based on the same family planning claim. On September 8, 2003, the BIA summarily affirmed the IJ's decision in petitioner's case, making no mention of the contrary ruling in her husband's case.

### II. *Discussion*

#### A. *Standard of Review*

▮ Where, as in this case, the BIA summarily affirms an IJ decision denying relief from removal, see 8 C.F.R. § 1003.1(e)(4), we treat the IJ's ruling as the final agency determination and review it directly, see *Ming Xia Chen v. BIA,* 435 F.3d 141, 144 (2d Cir.2006). We review *de novo* any questions of law. See *Yueqing Zhang v. Gonzales,* 426 F.3d 540, 543–44 (2d Cir.2005). The IJ's factual findings, however, "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Thus, we will affirm the IJ's factual determinations provided they are "supported by 'reasonable, substantial, and probative' evidence in the record," *Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003) (*per curiam*) (quoting *Diallo v. INS,* 232 F.3d 279, 287 (2d Cir.2000)), and were "not reached arbitrarily or capriciously," *Zhou Yun Zhang v. United States INS,* 386 F.3d 66, 74 (2d Cir.2004).

#### B. *Asylum and Withholding of Removal*

To qualify for asylum, "a refugee must demonstrate past persecution or a well-founded fear of future persecution on account of 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* at 70 (quoting 8

U.S.C. § 1101(a)(42)). The standard for withholding of removal is higher, *see id.* at 71, requiring a showing that "it is more likely than not" that the applicant's " 'life or freedom would be threatened' " on one of the enumerated grounds if she were returned to her native country, *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004) (quoting 8 U.S.C. § 1231(b)(3)(A)); *accord Xiao Ji Chen v. United States Dep't of Justice,* 434 F.3d 144, 155–56 (2d Cir.2006).

Applying these principles to this case, we conclude that substantial evidence supports the agency's denial of asylum and withholding of removal based on petitioner's claim of past political persecution. Nevertheless, we conclude that a remand is necessary to ensure that the agency's denial of Yan Fang Zhang's claim of feared future persecution based on China's family planning policies was not arbitrary or capricious in light of the grant of such relief to her husband.

### 1. *Past Persecution Based on Petitioner's Union Activism*

■ Petitioner contends that the IJ erred in concluding that the Chinese government did not persecute her for her political beliefs as manifested in efforts to organize factory workers to protest their terminations from employment. We disagree. Although we have recognized that union activism may constitute a protected expression of political opinion, *see, e.g., Osorio v. INS,* 18 F.3d 1017, 1029–30 (2d Cir.1994); *see also Yueqing Zhang v. Gonzales,* 426 F.3d at 547–48 (collecting cases discussing persecution based on political opinion), that is not this case.

The IJ's factual findings, which are detailed *supra* and are amply supported by the record, indicate that petitioner was laid off from her job for economic, not political, reasons. *Cf. Osorio v. INS,* 18 F.3d at

1031 (concluding that union activity was properly viewed as political because effort to legalize strikes by municipal workers could be perceived by government as threat to its authority). Moreover, when she and fellow workers organized a protest of their layoffs, the police responded by removing them from the factory premises, action that does not constitute persecution, *see Ivanishvili v. United States Dep't of Justice,* 433 F.3d 332, 341 (2d Cir.2006) (defining persecution as "the infliction of suffering or harm upon those who differ on the basis of a protected statutory ground"); *Tian-Yong Chen v. United States INS,* 359 F.3d 121, 128 (2d Cir.2004) (observing that persecution requires more than mere harassment), and does not indicate political motivation. To the extent petitioner found herself physically assaulted and harassed by a factory supervisor as a result of the factory protest, the IJ found this dispute to be personal, and we cannot conclude that the record evidence compelled otherwise. *See* 8 U.S.C. § 1252(b)(4)(B); *Ivanishvili v. United States Dep't of Justice,* 433 F.3d at 341–42 (noting that for actions of private persons to support relief from removal, government must be unwilling or unable to control such persons).

Accordingly, we deny the petition for review insofar as it challenges the agency's finding that Yan Fang Zhang failed to demonstrate past political persecution.

### 2. *Feared Future Persecution Based on China's Family Planning Policies*

■ Petitioner contends that, because she has given birth to two children while in the United States, the IJ and BIA erred in concluding that she failed to establish a well-founded fear of future persecution, specifically, forced sterilization, if returned

to China. We cannot resolve this challenge on the record before us.

■ It is, of course, clearly established that "[a] well-founded fear" of future persecution "has both a subjective and an objective component." *Jian Xing Huang v. INS*, 421 F.3d 125, 128 (2d Cir.2005) (*per curiam*) (internal quotation marks omitted). Thus, even though the IJ credited Yan Fang Zhang's professed subjective fear of future sterilization in China, to secure relief from removal, she was required to adduce some "other proof or objective facts" to demonstrate that her fear was objectively well founded. *Zhao Jin Lin v. Attorney Gen. of United States*, 441 F.3d 193, 195 n. 1 (2d Cir.2006) (*per curiam*) (quoting *Abankwah v. INS*, 185 F.3d 18, 22 (2d Cir.1999)). Applying these principles in *Jian Xing Huang v. United States INS*, this court ruled that the fact that an alien had two children born in the United States was insufficient, by itself, to demonstrate such an objectively well-founded fear. *See* 421 F.3d at 128–29. Noting that, in that case, "there was no evidence in the record as to how (if at all) Chinese family planning policy applied to the parents of children born abroad," *id.* at 127, and that country reports, in fact, suggested "that couples returning to China with more children than they would have been permitted at home are at worst, given modest fines," *id.* at 129 (internal quotation marks omitted), we declined to review the agency's denial of relief from removal.

On a preliminary review, this case appears analogous to *Jian Xing Huang.* We do not, however, conclusively decide that question at this time because we identify another concern that must first be resolved: the agency's grant of relief from

removal to Yan Fang Zhang's husband apparently on the same ground that it denied relief to her—feared future sterilization based on the birth of two children in the United States. Although the BIA was aware of the former grant of relief when it affirmed the IJ's denial of relief to Yan Fang Zhang, it failed to address, much less explain, its apparent inconsistent treatment of the couple's seemingly identical future persecution claims.

■ To be sure, IJs are required to "give each asylum case individualized scrutiny." *Njuguna v. Ashcroft*, 374 F.3d 765, 771 n. 4 (9th Cir.2004); *see also Miranda Alvarado v. Gonzales*, 449 F.3d 915, 924 (9th Cir.2006) (observing that "an IJ decision, although presented as the final agency determination to be reviewed in federal court, is not legally relevant to any future decision-making, including by the very IJ who issued it"). Further, we recognize that, in an entity as large and overburdened as the Executive Office for Immigration Review, it is "unavoidable" that "different officials may not act identically in every case." *Henry v. INS*, 74 F.3d 1, 5–6 (1st Cir.1996) (noting that "lack of complete uniformity is unavoidable—after all, administrators are not automatons"). Nevertheless, it is a fundamental principle of justice that "similarly situated individuals be treated similarly." *Njuguna v. Ashcroft*, 374 F.3d at 771 n. 4; *see Henry v. INS*, 74 F.3d at 6 (observing that "administrative agencies must apply the same basic rules to all similarly situated supplicants"). The apparently inconsistent decisions on the relief applications of Yan Fang Zhang and her husband raise a concern about the operation of this principle, particularly in the BIA's review of petitioner's appeal.[4]

4. We note that we have previously treated this issue in unpublished summary orders. *See, e.g., Yun Fen Jin v. Gonzales*, 165 Fed.Appx.

At a minimum, an IJ's finding that petitioner's husband had an objectively reasonable fear of future persecution would suggest that there is some evidence to conclude that petitioner's identically premised fear of future persecution is also objectively reasonable. A rational system of law would seem to require consistent treatment of such identical claims, or, at the very least, an explanation from the BIA for their seemingly inconsistent treatment. Indeed, without such an explanation, we cannot be assured that the agency's grant of relief to Yan Fang Zhang's husband and its denial of relief to her is not arbitrary or capricious. *See Zhou Yun Zhang v. United States INS*, 386 F.3d at 74; *see also Njuguna v. Ashcroft*, 374 F.3d at 771 n. 4 (noting that court found it "disturbing" that three applicants were granted asylum, while petitioner, whose claim was based on same factual circumstances, was deemed ineligible); *Xuan Wang v. Ashcroft*, 341 F.3d 1015, 1019 n. 2 (9th Cir.2003) (criticizing BIA for denying wife asylum based on two prior forced abortions when husband was granted asylum on same grounds); *cf. Xin–Chang Zhang v. Slattery*, 55 F.3d 732, 747 (2d Cir.1995) (noting general principle that, where agency departs from "settled course of behavior" it is "obliged to supply a reasoned analysis for the change") (internal quotation marks omitted), *abrogated on other grounds by statute*, 8 U.S.C. § 1101(a)(42); *Davila–Bardales v. INS*, 27 F.3d 1, 5 (1st Cir.1994) (observing that although "agencies retain a substantial measure of freedom to refine, reformulate, and even reverse their precedents in [ ] light of new insights and changed circum-

stances ... the law demands a certain orderliness," and thus "[i]f an administrative agency decides to depart significantly from its own precedent, it must confront the issue squarely and explain why the departure is reasonable") (internal citations omitted).

Accordingly, we remand this case to the BIA for further review of petitioner's future persecution claim in light of the relief afforded to her husband.[5]

### III.  *Conclusion*

For the reasons stated, we DENY the petition for review of the BIA's September 8, 2003 order insofar as that order denies petitioner's claims for asylum and relief from removal based on past political persecution, and her CAT claim on any ground. We GRANT the petition for review of the BIA order insofar as it denies petitioner's claims for asylum and relief from removal based on feared future persecution, and to that extent we hereby REMAND for further review in light of the relief afforded petitioner's spouse.

36, 39 (2d Cir.2006); *Shao Mei Li v. BIA*, 148 Fed.Appx. 70, 71 (2d Cir.2005).

**5.** In light of our remand order, we need not address petitioner's challenge to the BIA's streamlined review of her case. *See* 8 C.F.R.

§ 1003.1(e)(3)-(6). Recently, however, this court ruled that we generally lack jurisdiction to review decisions to streamline. *See Kambolli v. Gonzales*, 449 F.3d 454, 463 (2d Cir. 2006).